2016 IL App (1st) 133492

SIXTH DIVISION
Opinion Filed:   April 29, 2016

No. 1-13-3492

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 83 C 127 |
| | ) | |
| ROBERT GACHO, | ) | Honorable |
| | ) | Diane Cannon, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HOFFMAN delivered the judgment of the court, with opinion.
Presiding Justice Rochford concurred in the judgment and opinion.
Justice Delort dissented, with opinion.

**OPINION**

¶ 1    The defendant, Robert Gacho, appeals from the circuit court's denial of his petition brought pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2008)), following an evidentiary hearing.   He argues that the denial of his petition is manifestly erroneous as the evidence presented established both that he was denied a fair trial due to the corruption of the trial judge and that he was denied effective assistance of counsel when his trial attorney labored under a conflict of interest.   For the reasons which follow, we affirm the judgment of the circuit court.

¶ 2    The defendant, along with Dino Titone and Joseph Sorrentino, was charged with multiple counts of aggravated kidnapping, armed robbery, and the murders of Tullio Infelise and Aldo Fratto.    The defendant's trial was severed from that of his co-defendants.    The defendant and Titone were subsequently tried simultaneously before a single judge, Thomas Maloney, with the defendant electing a jury trial and Titone choosing a bench trial.    The jury that found the defendant guilty on all counts and, finding no mitigating factors, imposed a sentence of death for the murders of Infelise and Fratto.    On direct appeal, the supreme court affirmed the defendant's convictions but vacated his death sentence and ordered that he be resentenced.    *People v. Gacho*, 122 Ill. 2d 221, 264 (1988).    On remand, the defendant was sentenced to life imprisonment.

¶ 3    The evidence supporting the defendant's convictions is detailed in the supreme court's decision on his direct appeal.    See *Gacho*, 122 Ill. 2d at 229-32.    Consequently, we will recount only those facts necessary to place the defendant's post-conviction claims in context.

¶ 4    On February 15, 1991, the defendant filed a *pro se* post-conviction petition, asserting, among other claims, that Maloney's corruption deprived him of a fair trial and that he was denied effective assistance of counsel when his trial attorney labored under a conflict of interest by reason of his having represented a relative of the victim, Tullio Infelise.    On November 10, 1997, following the appointment of post-conviction counsel, an amended post-conviction petition was filed on behalf of the defendant which stated that it replaced all of the claims in the defendant's initial petition.    As grounds for relief, the amended petition also raised, *inter alia*, the corruption of the trial judge and a conflict of interest on the part of the defendant's trial attorney.

¶ 5    On April 19, 1999, the defendant's post-conviction counsel withdrew and new counsel was appointed.    The defendant's new post-conviction counsel filed a supplemental

post-conviction petition on July 30, 2008, and informed the court that the pleading was intended to supplement the defendant's original *pro se* petition. The supplemental petition noted that Maloney had been convicted of accepting bribes in exchange for promises to "fix" trials. It also alleged that Titone, the co-defendant whose bench trial was conducted simultaneously with the defendant's jury trial, had paid Maloney to find him not guilty. The claim was supported by the affidavit of Titone's father who described a scheme pursuant to which his son's attorney would give money to an intermediary, who would then pass the money to Maloney. The affidavit asserted that Titone's attorney told Titone's father that, "as long as Maloney got two out of three" of the co-defendants, "it would be enough"; that is, "as long as [the defendant and Sorrentino] were found guilty, [Maloney] could get away with letting [Titone] go free." However, Maloney ultimately found Titone guilty and sentenced him to death. In his affidavit, Titone's father speculated that either his son's attorney never paid the $10,000 bribe or Maloney reneged on the deal for fear of being discovered. The supplemental petition asserted that Titone had been granted a new trial based upon evidence that Maloney had been paid $10,000 to find him not guilty. The supplemental petition was also supported by the defendant's affidavit, asserting that his pretrial attorney, Daniel Radakovich, had suggested that he also bribe Maloney, but that he was unable to raise the funds to do so. In addition, the affidavits of the defendant's mother, Edith Rhoades, and his aunt, Margaret Shur, were attached to the supplemental petition. In her affidavit, Rhoades averred that, on the date that the defendant was arraigned, Radakovich told her that, if she could raise $60,000 to give to the judge, the charges against the defendant would be reduced. The affidavit also states that Rhoades subsequently informed Radakovich that she was unable to raise $60,000. In her affidavit, Shur averred that the defendant wrote her a letter stating that for $60,000 he could "walk from the case," and that during a later conversation with the defendant, the subject of a $60,000 bribe to be paid to the judge was brought up.

¶ 6     On February 4, 2009, the State filed a motion to dismiss the defendant's supplemental post-conviction petition.   On May 29, 2009, the circuit court granted the State's motion and dismissed the defendant's petition without an evidentiary hearing.   The defendant appealed and this court affirmed the dismissal of one of the claims raised in the supplemental petition, but reversed the dismissal of the defendant's claim that he was denied a fair trial as the result of judicial corruption and reversed the dismissal of his ineffective assistance of counsel claim based upon his attorney's alleged conflict of interest.   We remanded the matter back to the circuit court with instructions to conduct an evidentiary hearing on the two remaining claims to determine if either entitled the defendant to a new trial.   *People v. Gacho*, 2012 IL App (1st) 091675 (*Gacho I*), ¶ 33.

¶ 7     On remand, the circuit court held the evidentiary hearing as directed.   The defendant testified that, in January 1983, one of his friends, Bill Benham, hired attorneys Jerry Kruz and Radakovich to represent him in the underlying case which was pending before Maloney. According to the defendant, Radakovich told him that Maloney could be bribed, and that for $60,000, or the equivalent value of narcotics, he would be acquitted.   The defendant stated that he told Radakovich to speak to his mother about raising the money.   According to the defendant, every time they spoke, Radakovich suggested that he pay Maloney, and that when he was unable to raise the money, Radakovich seemed disinterested in his case.   The defendant testified that he spoke to Benham about hiring a new attorney, and that shortly thereafter, his aunt hired Robert McDonnell to represent him.

¶ 8     The defendant initially testified that, just before his trial commenced, McDonnell informed him that, in the past, he had represented Tullio Infelise or Rosario Infelise.   He then testified that McDonnell told him that he had represented the victim, Tullio Infelise, on some legal matter "a long time ago," but that McDonnell could not remember what that matter was.

When cross examined, the defendant admitted that he had never alleged in any of his post-conviction petitions that McDonnell had represented the victim, Tullio Infelise; rather, he only alleged that McDonnell had represented a member of Tullio Infelise's family. Also on cross-examination, the defendant testified that he first learned that McDonnell was representing Rosario Infelise after he was convicted. Certified copies of records from the criminal case in which McDonnell represented Rosario Infelise revealed that McDonnell represented Rosario Infelise from January 1984, through August 15, 1984. The record reflects that, on September 19, 1984, before the defendant's trial began, an assistant State's Attorney informed the court that, in the past, McDonnell had represented a member of Tullio Infelise's family. Thereupon, the following exchange took place between the trial judge, Maloney, and the defendant:

"THE COURT: Mr. Gacho, are you aware of all of these circumstances that are being referred to and discussed now?

DEFENDANT: Yes Sir.

THE COURT: And have you discussed it with your attorney?

DEFENDANT: Yes.

THE COURT: And you have no objection to whatever has occurred in the past regarding Mr. McDonnell's representation of a family member of one of the victims?

DEFENDANT: No, I don't.

THE COURT: And you wish him to continue as your lawyer, is that correct?

DEFENDANT: Yes."

¶ 9 Ronald Barrow, who was serving a life sentence for murder at the Menard Correctional Center, testified on behalf of the defendant at the evidentiary hearing. According to Barrow, in May 1995, while he was incarcerated in the Cook County jail waiting to testify in an unrelated case, he spoke with Titone who told him that "he felt it was bad Karma when the judge double

crossed him on a deal he made to slam Bob Gacho and convict him." According to Barrow, Titone told him that his father had paid Maloney $10,000 to find him not guilty. When, on cross-examination, Barrow was shown the Cook County sheriff's office booking card for the Cook County jail, he admitted that it failed to reflect that Titone was in the jail in May 1995. The records did reflect that Titone was in the Cook County jail from October 15, 1997, through October 20, 1998. However, Barrow was not in the Cook County jail after May 1995.

¶ 10    Radakovich testified as a State's witness at the evidentiary hearing. He stated that he was asked to assist in the representation of the defendant by Kruz, one of his high school classmates with whom he had tried a number of cases. According to Radakovich, he was not yet representing the defendant when the defendant was arraigned on January 7, 1983. Radakovich testified that he represented the defendant from February through December 1983. He denied: telling the defendant that Maloney would acquit him for $60,000 or a quantity of narcotics; having a conversation with the defendant about obtaining money to pay to Maloney; or telling the defendant that he would be convicted if he did not obtain the money to bribe Maloney. He also denied ever asking the defendant's mother to raise money to bribe Maloney. Radakovich did recall two conversations with the defendant's mother during which she started talking "very bizarrely." Although Radakovich admitted speaking to Titone's attorney, he denied ever hearing that Maloney had been paid to find Titone not guilty. Contrary to the defendant's testimony that he appeared disinterested in the defendant's case, Radakovich testified that he filed answers to discovery and prepared a motion to suppress the statements which the defendant made to the police.

¶ 11    After the parties rested and the attorneys made their arguments, the circuit court reversed a prior ruling and, over the State's objection, admitted into evidence the affidavits from Titone's father, Rhoades, and Suhr which were attached to the defendant's supplemental post-conviction

petition. As of the date of the hearing, all three of the affiants were dead. Following the admission of the affidavits into evidence, the parties stipulated that, if recalled to testify, Radakovich would testify that he did not represent the defendant at the time of his arraignment and did not speak to Rhoades on that day; that he never told Rhoades that, if she could raise $60,000 for Maloney, the charges against the defendant would be reduced; and that he never received a phone call from Rhoades telling him that she was unable raise money to pay Maloney.

¶ 12    On October 13, 2013, the circuit court entered a written order denying the defendant's post-conviction petition, finding that he failed to demonstrate that his constitutional rights had been violated.   This appeal followed.

¶ 13    As an initial matter, we will briefly address and reject the defendant's assertion that our prior decision in *Gacho I*, has some preclusive effect on the issues in this appeal.   In our prior decision, we were reviewing a second-stage dismissal of a post-conviction petition and were, therefore, required to take all of the well-pleaded facts in the petition and accompanying affidavits as true. *People v. Towns*, 182 Ill. 2d 491, 503 (1998).   We made clear in our decision that our findings were based upon the defendant's allegations being taken as true.   See *Gacho I*, 2012 IL App (1st) 091675, ¶¶ 16, 19, 21-22.   In the instant appeal from the denial of the defendant's post-conviction petition following a third-stage evidentiary hearing, the issue is whether the defendant met his burden to prove his entitlement to post-conviction relief.   *People v. Coleman*, 206 Ill. 2d 261, 277 (2002).   In addition, the standards of review are different. We conducted a *de novo* review of the second-stage dismissal of the defendant's post-conviction petition, according no deference to the findings of the trial judge.   *People v. Whitfield*, 217 Ill. 2d 177, 182 (2005).   In contrast, we apply a manifestly erroneous standard to our review of the circuit court's denial the defendant's post-conviction petition following a third-stage evidentiary hearing and accord great deference to the trial court's factual determinations.   *People v.*

*Childress*, 191 Ill. 2d 168, 174 (2000). Stated otherwise, the findings which we made in support of our earlier decision are not conclusive of the issues in this appeal as the defendant no longer enjoys the presumption that the allegations in his petition and accompanying affidavits are true.

¶ 14 For his first assignment of error, the defendant argues that the circuit court's determination that he failed to demonstrate that he was deprived of his constitutional right to a fair trial based upon judicial corruption is manifestly erroneous. He asserts that the evidence adduced at his third-stage post-conviction hearing "indisputably demonstrates there was a 'nexus' between Maloney's practice of taking bribes from defendant's and [his] *** case, and that Maloney had a personal interest in the outcome of [the defendant's] *** case where a $10,000 bribe tendered by co-defendant Dino Titone incorporated a scheme where both [the defendant] *** and co-defendant Joseph Sorrentino would be found guilty in exchange for a not guilty finding for Titone." The State argues, *inter alia*, that the evidence presented at the hearing failed to demonstrate bias on the part of Maloney in the defendant's case. We agree with the State.

¶ 15 The Act provides a procedural mechanism pursuant to which an individual convicted of a crime can assert that "in the proceedings which resulted in his or her conviction there was a substantial denial of his or her rights under the Constitution of the United States or of the State of Illinois or both." 725 ILCS 5/122-1(a)(1) (West 2008). In non-capital cases, the Act provides a three-stage process for the adjudication of post-conviction petitions. *People v. Boclair*, 202 Ill. 2d 89, 99 (2002). When a post-conviction petition is advanced to a third-stage evidentiary hearing, the defendant bears the burden of showing a substantial deprivation of his constitutional rights. *Coleman*, 206 Ill. 2d at 277. Where, as in this case, fact-finding and credibility determinations are made by the circuit court in a third-stage proceeding, its decision will not be

reversed on appeal unless it is manifestly erroneous. *Childress*, 191 Ill. 2d at 174. Manifest error is that which is "clearly evident, plain, and indisputable." *People v. Ruiz*, 177 Ill. 2d 368, 384-85 (1997).

¶ 16 "A fair trial before a fair tribunal is a basic requirement of due process" (*People v. Hawkins*, 181 Ill. 2d 41, 50 (1998) (citing *Bracy v. Gramley*, 520 U.S. 899 (1997))) as guaranteed by the fifth and fourteenth amendments to the United States Constitution (U.S. Const., amend. V, XIV) and Article I, section 2 of the Illinois Constitution (Ill. Const. 1970, art. I, § 2). "Fairness at trial requires not only the absence of actual bias but also the absence of the probability of bias." *Hawkins*, 181 Ill. 2d at 50 (citing *In re Murchison*, 349 U.S. 133, 136 (1955)). "To this end, no person is entitled to judge cases in which he or she has an interest in the outcome." *Hawkins*, 181 Ill. 2d at 50.

¶ 17 The defendant in this case does not contend that he bribed Maloney; rather, he contends that his co-defendant, Titone, bribed Maloney. However, the defendant failed to produce any direct evidence that Maloney was, in fact, bribed by Titone. Nevertheless, we are aware of two decisions which make a factual reference to Titone having given Maloney a $10,000 bribe to find him not guilty but that Maloney convicted him anyway and sentenced him to death. See *Bracy v. Schomig*, 286 F.3d 406, 412 (7th Cir. 2002) (*en banc*); *United States ex rel Titone v. Sternes*, 2003 WL 21196249 (N.D. Ill. May 15, 2003). We will assume, therefore, for purposes of our analysis, that Titone did bribe Maloney and that Maloney convicted Titone to deflect suspicion from himself.

¶ 18 There is no direct evidence in the record that Maloney solicited, received, or agreed to accept a bribe to influence his rulings in the defendant's case. The defendant's testimony regarding Radakovich's alleged suggestion that Maloney could be bribed was found by the trial judge to be incredible. Radakovich denied that he ever told the defendant that Maloney could

be bribed, and the trial judge found his testimony credible. It was the trial judge's function to assess the credibility of the defendant and Radakovich and determine the weight to be given to their testimony, and we will not substitute our judgment for that of the trial judge on these matters. *People v. Domagala*, 2013 IL 113688, ¶ 34. The affidavits of Titone's father and Shur admitted in evidence over the State's objection consist of nothing more than hearsay and are, therefore, insufficient to support a claim under the Act. *People v. Walker*, 2015 IL App (1st) 130530, ¶ 25. Further, the assertion in Rhoades' affidavit that Radakovich told her on the date of the defendant's arraignment that, if she could raise $60,000 to give to the judge, the charges against the defendant would be reduced was repudiated by Radakovich who testified that he never spoke to Rhoades about bribing Maloney and that he was not even representing the defendant on the date of his arraignment. The trial judge specifically found Radakovich's testimony to be credible. Finally, Barrow's testimony concerning his alleged conversation with Titone at the Cook County jail in May 1995, in addition to being hearsay, was, as the trial judge found, incredible in light of the fact that there is no record of Titone having been in the Cook County jail in May 1995.

¶ 19 Relying upon the affidavit of Titone's father, the defendant asserts that part of the scheme pursuant to which Maloney accepted a bribe to find Titone not guilty was the requirement that he be found guilty. The defendant concludes, therefore, that Maloney possessed a personal, pecuniary interest in the outcome of his trial. There is no question that, if Maloney possessed a pecuniary interest in the outcome of the defendant's trial, the defendant would be entitled to relief under the Act in the form of a new trial. *Tumey v. State of Ohio,* 273 U.S. 510, 523 (1927); see also *Bracy*, 520 U.S. at 904-905; *People v. Fair*, 193 Ill. 2d 256, 262-63 (2000). However, the defendant's entire argument in this regard rests upon the affidavit of Titone's father which consists of nothing more than hearsay. As to that portion of the alleged bribery scheme relating

to the requirement that the defendant be found guilty, Titone's father merely related what he was told by his son's attorney. As noted earlier, hearsay is insufficient to support a claim under the Act. We are still left, however, with the question of whether the fact that Maloney accepted a bribe to find Titone not guilty standing alone entitles the defendant to relief under the Act.

¶ 20 The fact that Maloney was bribed in some cases does not establish that he was not impartial in others. *Fair*, 193 Ill. 2d at 261; *People v. Titone*, 151 Ill. 2d 19, 29 (1992). The proposition may even hold true when, as in this case, "the bribe involves a codefendant and the two defendants are tried together, albeit one to the jury and the other to the judge." *Cartalino v. Washington*, 122 F.3d 8, 10 (7th Cir. 1997). It is merely a suspicious circumstance that warrants further inquiry. *Cartalino*, 122 F.3d at 10. The fact that Titone bribed Maloney does not in and of itself establish Maloney's lack of impartiality in the defendant's trial. *Cartalino*, 122 F.3d at 10.

¶ 21 The defendant asserts that the "unrebutted facts establish that *** Maloney harbored a direct compensatory bias" against him. There is no question that the defendant would have been deprived of due process and entitled to relief under the Act if Maloney harbored a compensatory bias against him to camouflage the bribe which he took from Titone or his criminal activity in other cases. See *Bracy*, 520 U.S. at 906. However, a defendant "who alleges that his trial judge's corruption violated his right to a fair trial must establish (1) a 'nexus' between the judge's corruption or criminal conduct in other cases and the judge's conduct at [the defendant's] trial; and (2) actual bias resulting from the judge's extrajudicial conduct." *Fair*, 193 Ill. 2d at 261. The dissent asserts that "the success of a judicial bias claim does not depend on whether the claimant can make a showing of actual bias." In support of the proposition, the dissent cites to *Tumey,* 273 U.S. 510 and *Caperton* vs. *A.T. Massey Coal Co., Inc.*, 556 U.S. 868 (2009). We believe that *Tumey* and *Caperton*, are factually dissimilar from the circumstances in

this case. In *Tumey* and *Caperton*, the facts established a direct, personal and substantial influence upon the judges, either by reason of a pecuniary interest in the outcome of the litigation involved (see *Tumey,* 273 U.S. at 523) or because the officers of the litigant corporation had contributed $3 million to the judge's election (see *Caperton*, 556 U.S. at 872-73). In such circumstances, the Supreme Court held that no actual bias on the part of the judge need be shown in order to establish a due process violation. When, however, the Supreme Court was faced with a case involving a charge of compensatory bias, as asserted in this case, it found that the defendant was entitled to discovery to establish <u>actual</u> judicial bias in the trial of his case. See *Bracy v. Grimley,* 520 U.S. 899, 908-09 (1997). *Fair* also involved a claim of compensatory bias and held that, when a defendant alleges a deprivation of due process as the result of compensatory bias on the part of a corrupt trial judge, he must establish <u>actual</u> bias resulting from the judge's conduct. *Fair,* 193 Ill.2d at 261; see also *People v Titone,* 151, Ill.2d 19, 30-31 (1992).

¶ 22    In this case, there is no competent or credible evidence in the record supporting a finding that Maloney had a pecuniary interest in the outcome of the defendant's case, that the defendant bribed Maloney, that Maloney solicited a bribe from the defendant, or that the bribery scheme which existed between Maloney and the codefendant, Titone, included any requirement involving the outcome of the defendant's trial. Distilled to its finest, the record in this case establishes only that the defendant was tried simultaneously with a co-defendant who, as we have assumed for purposes of analysis, bribed a corrupt trial judge; thus giving rise to a claim of compensatory bias which we believe is governed by the holding in *Fair*.

¶ 23    There can be little doubt as to Maloney's pervasive corruption in other cases (see *United States v. Maloney*, 71 F.3d 645 (7th Cir. 1995); *Hawkins*, 181 Ill. 2d at 51), but Maloney's pattern of bribe taking (see *Maloney*, 71 F.3d at 649-52) cannot alone support an inference that he engaged in compensatory bias in the defendant's case (see *Bracy*, 286 F.3d at 420-22). We

have assumed, for purposes of our analysis, that Maloney accepted a bribe from Titone; thus establishing a connection between Maloney's criminal conduct and his status as the trial judge in the defendant's case. However, under the rule announced in *Fair,* it was still the defendant's burden to establish that Maloney was actually biased in the defendant's own case. *Fair*, 193 Ill. 2d at 261.

¶ 24    Having found no credible evidence that Maloney solicited a bribe from the defendant or that he possessed a pecuniary interest in the outcome of the defendant's case, we have examined the record to determine if there is any evidence of actual bias in the defendant's case. We have found none. The trial judge's order reflects that, although the defendant was convicted by a jury, she also explored the possibility that Maloney compromised the defendant's rights during the trial but "could not find one questionable ruling," and the defendant has failed to bring any questionable ruling to this court's attention. Further, on direct appeal, the supreme court rejected the defendant's contentions of error at trial, finding only that the prosecutor's comments during the death sentencing phase deprived the defendant of a fair sentencing hearing. *Gacho*, 122 Ill. 2d at 255-58. As the defendant has failed to establish any actual bias against him by reason of either Maloney's acceptance of a bribe from his co-defendant or Maloney's pattern of bribe taking in other cases, his claim of compensatory bias fails.

¶ 25    For the reasons stated, we conclude that the trial court's finding that the defendant failed to meet his burden of establishing that his constitutional rights were violated by reason of Maloney's corruption is not manifestly erroneous.

¶ 26    Finally, we address the defendant's argument that the circuit court's finding that he waived any potential conflict of interest on the part of his trial attorney is also manifestly erroneous. The defendant asserts that the evidence adduced at the evidentiary hearing established that, without his knowledge, McDonnell represented Rosario Infelise, a member of

Tullio Infelise's family, during the pendency of his trial. On the issue of waiver, the defendant contends that it was the conflict created by McDonnell's past representation of Tullio Infelise that he waived, not McDonnell's representation of Rosario Infelise. The State argues that the evidence of record makes plain the fact that the defendant was aware of McDonnell's representation of Rosario Infelise and chose to waive any potential conflict arising from that representation. Again, we agree with the State.

¶ 27    The sixth and fourteenth amendments to the United States Constitution guarantee a criminal defendant the right to effective assistance of counsel. U.S. Const., amend. VI, XIV; *Cuyler v. Sullivan*, 446 U.S. 335, 343-44 (1980); *People v. Taylor*, 237 Ill. 2d 356, 374 (2010). The right to effective assistance of counsel includes the right to conflict-free representation. *People v. Hernandez*, 231 Ill. 2d 134, 142 (2008).

¶ 28    Our supreme court has identified three situations where a *per se* conflict of interest exists: (1) where defense counsel has a prior or contemporaneous association with the victim, the prosecution, or an entity assisting the prosecution; (2) where defense counsel contemporaneously represents a prosecution witness; and (3) where defense counsel was a former prosecutor who had been personally involved in the prosecution of the defendant. *Hernandez*, 231 Ill. 2d at 143-44. If a *per se* conflict of interest is found, the defendant need not show that the conflict actually affected his attorney's performance. Unless the defendant waives his right to conflict-free representation, a *per se* conflict of interest is grounds for automatic reversal. *Hernandez*, 231 Ill. 2d at 143.

¶ 29    In this case, the defendant argues that McDonnell's representation of Rosario Infelise constituted a *per se* conflict of interest. He asserts that his waiver in open court on September 19, 1984, related to McDonnell's past representation of Tullio Infelise, the victim. We believe that the record belies his assertion in this regard.

¶ 30    As noted earlier, on September 19, 1984, before the defendant's trial began, an assistant State's Attorney brought to the court's attention the fact that McDonnell had represented "one member of the victim's family."   The defendant acknowledged that he was aware of the circumstances and had no objection to McDonnell's representation of "a family member of one of the victims" and wished McDonnell to continue as his lawyer.   It strains all reason to suggest, as the defendant now does, that the disclosure and waiver in open court on September 19, 1984, related to McDonnell's past representation of the victim himself.   In the 20-plus years which elapsed between the filing of the defendant's *pro se* post-conviction petition until the third-stage evidentiary hearing, the defendant never once alleged that McDonnell had represented Tullio Infelise.   The very first time that he made such an allegation was when he testified at the evidentiary hearing.   In each of the petitions, his claim was always that McDonnell labored under a conflict of interest by reason of his having represented a member of Tullio Infelise's family.

¶ 31    The record discloses that McDonnell represented Rosario Infelise in a criminal matter from January 1984 through August 15, 1984.   There is no evidence in the record, save for the defendant's testimony which the circuit court found to be incredible, that McDonnell ever represented Rosario Infelise after August 15, 1984, that he ever represented Tullio Infelise, or that McDonnell represented any member of Tullio Infelise's family other than Rosario Infelise. The allegations in the defendant's supplemental post-conviction petition survived a second-stage dismissal based upon waiver because the petition alleged that McDonnell's representation of Rosario Infelise continued after September 19, 1984.   *Gacho*, 2012 IL App (1st) 091675, ¶ 30. However, at the evidentiary hearing, the defendant produced nothing other than his own testimony which the circuit court found to be incredible that McDonnell ever represented Rosario Infelise after August 15, 1984.   We believe that the only reasonable inference which

can be drawn from the credible evidence of record is that the disclosure in open court on September 19, 1984, related to McDonnell's past representation of Rosario Infelise.

¶ 32    The defendant asserts that McDonnell's representation of Rosario Infelise amounted to a *per se* conflict of interest because, as a member of Tullio Infelise's family, Rosario Infelise would benefit from the defendant's conviction.    The record does not disclose the relationship of Rosario Infelise to the victim Tullio Infelise, nor does the defendant explain exactly how Rosario Infelise might have benefited from the defendant's conviction.    Nevertheless, the defendant argues that McDonnell's contemporaneous attorney-client relationship with Rosario Infelise while the defendant was on trial for the murder of Tullio Infelise is the type of relationship that the supreme court has categorized as a *per se* conflict of interest.

¶ 33    Contrary to the defendant's argument, however, the fact that a defendant's attorney has some tie to a person that might benefit from the defendant's conviction is not an additional or alternate circumstance in which a *per se* conflict of interest may be found.    The statement merely describes the justification for the three situations in which the supreme court has found that a *per se* conflict exists.    *People v. Fields*, 2012 IL 112438, ¶ 40.    In this case, there is no credible evidence that McDonnell had a prior or contemporaneous association with the victim, Tullio Infelise, nor is there any evidence which would satisfy the other circumstances which give rise to a *per se* conflict of interest.    Consequently, we reject the defendant's argument that, based upon his representation of Rosario Infelise, McDonnell labored under a *per se* conflict of interest.    However, even if we were to have found that McDonnell had a *per se* conflict of interest by reason of his representation of Rosario Infelise, we would be unable to conclude based upon the record before us that the circuit court's finding that the defendant waived the conflict is manifestly erroneous.

¶ 34    If a *per se* conflict of interest does not exist, a defendant may still establish a violation of his right to effective assistance of counsel by showing an actual conflict of interest that adversely affected his attorney's performance.   *People v. Morales*, 209 Ill. 2d 340, 348-49 (2004).   In order to show an actual conflict of interest, a defendant must point to some specific defect in his attorney's strategy, tactics, or decision making attributable to a conflict.   *Morales*, 209 Ill. 2d at 349; *People v. Spreitzer*, 123 Ill. 2d 1, 18 (1988).   Suffice it to say, the defendant made no such showing in this case.

¶ 35    Based upon the foregoing analysis, we conclude that the circuit court's finding that the defendant "failed to demonstrate by his requisite burden that his constitutional rights were violated" is not manifestly erroneous, and we, therefore, affirm its denial of the defendant's petition seeking post-conviction relief.

¶ 36    Affirmed.

¶ 37    JUSTICE DELORT, dissenting:

¶ 38    The misdeeds of Judge Thomas J. Maloney are so well-documented that his name has become synonymous with judicial corruption.   See, *e.g.*, *Bracy v. Gramley*, 520 U.S. 899, 901-03 (1997) (noting that Judge Maloney "has the dubious distinction of being the only Illinois judge ever convicted of fixing a murder case"); *United States v. Maloney*, 71 F.3d 645, 649-52 (7th Cir. 1995).   One might assume that since Judge Maloney's ignominious tenure on the bench ended 26 years ago and his criminal acts were addressed shortly thereafter, his judicial legacy has been consigned to the dustbin of history.   Yet petitioner Robert Gacho, one of the defendants convicted by Judge Maloney, remains incarcerated.   Gacho was tried in Maloney's courtroom, convicted of murder, and sentenced to death in 1984.   The Illinois Supreme Court vacated Gacho's death sentence, but otherwise left his conviction intact.   Thus, 32 years after his conviction, Gacho calls on us to address his request for relief based on Maloney's corruption.

¶ 39    Criminal defendants have the right to an impartial judge no matter how compelling the evidence against them.   Even the simple appearance or probability of corruption warrants relief, for as the Supreme Court explained long ago, "to perform its high function in the best way 'justice must satisfy the appearance of justice.' "   *In re Murchison*, 349 U.S. 133, 136 (1955) (quoting *Offutt v. United States*, 348 U.S. 11, 14 (1954)); see also *People v. Hawkins*, 181 Ill. 2d 41, 50 (1998) ("Fairness at trial requires not only the absence of actual bias but also the absence of the probability of bias.").   Judicial corruption undermines faith in the rule of law and dispels the time-honored maxim that ours is "a government of laws, and not of men."   *Marbury v. Madison*, 5 U.S. 137, 163 (1803).

¶ 40    Over 50 years ago, the United States Supreme Court stated:

> "A fair trial in a fair tribunal is a basic requirement of due process.   Fairness of course requires an absence of actual bias in the trial of cases.   But our system of law has always endeavored to prevent even the probability of unfairness.   To this end no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome."   *In re Murchison*, 349 U.S. 133, 136 (1955).

¶ 41    Since then, the Court has held time and again that the Due Process Clause of the Fourteenth Amendment entitles litigants to a trial before an unbiased judge who does not have a personal interest in the outcome of the case.   *Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 876 (2009); *Bracey*, 520 U.S. at 904; *Withrow v. Larkin,* 421 U.S. 35, 46 (1975); *Ward v. Village of Monroeville, Ohio*, 409 U.S. 57, 61-62 (1972).   Illinois courts have long heeded this message. See *Hawkins*, 181 Ill. 2d at 50 (1998) ("A fair trial in a fair tribunal is a basic requirement of due process.").

¶ 42    The United States Supreme Court has also held that it is not necessary for those bringing claims of judicial bias to show that the judge before whom their case was adjudicated was actually biased.   In *Caperton,* for example, the Court explained that "the Due Process Clause has been implemented by objective standards that do not require proof of actual bias."   *Caperton*, 556 U.S. at 883; see also *Tumey v. State of Ohio*, 273 U.S. 510, 532 (1927) ("Every procedure which would offer a *possible temptation* to the average man as a judge to forget the burden of proof required to convict the defendant, or which *might* lead him not to hold the balance nice, clear, and true between the state and the accused denies the latter due process of law."   (Emphasis added.)).   As our supreme court explained in *Hawkins*, another judicial bias case revolving around Judge Maloney, because the relevant inquiry "is limited to whether Maloney could have been tempted not to hold the balance between the parties 'nice, clear and true' [citations], defendant[] need not show actual bias by the trier of fact in order to be granted a new trial."   *Hawkins*, 181 Ill. 2d at 51 (quoting *Tumey*, 273 U.S. at 532).   "Rather, the question is whether, 'under a realistic appraisal of psychological tendencies and human weakness,' the interest 'poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented.' "   *Caperton*, 556 U.S. at 870 (quoting *Withrow,* 421 U.S. at 47).

¶ 43    Accordingly, Gacho should prevail if the circumstances show that "the probability of actual bias on the part of the judge" was "too high to be constitutionally tolerable."   *Withrow,* 421 U.S. at 47; *Hawkins*, 181 Ill. 2d at 51.   It is undisputed that Judge Maloney was tainted by corruption in the simultaneous trial of Gacho's codefendant Dino Titone.   In *People v. Gacho*, 2012 IL App (1st) 091675 (*Gacho I*), this court noted that the State "concede[d] that Maloney was corrupt, and it further concede[d] that Maloney's corruption tainted the trial" of Titone.   *Id*. ¶ 20. In the course of recounting Judge Maloney's actions, the Seventh Circuit Court of Appeals noted that "a defendant named Dino Titone gave Maloney a $10,000 bribe, but Maloney convicted him

anyway. Judge Earl E. Strayhorn, the Illinois judge presiding over Titone's post-trial motion, vacated the conviction because Maloney had a motive to convict Titone to deflect suspicion from himself." *Bracy v. Schomig*, 286 F.3d 406, 412 (7th Cir. 2002). And in *Gacho I*, this court stated "it is difficult to conceive how Maloney's misconduct in Titone's trial did not also infect the defendant's trial. The trials were held simultaneously, concerned the same set of murders, *and were both presided over by a man the State concedes had an interest in the proceedings*." (Emphasis added.) *Id.* While we now must consider the case under the different standards applicable to our review following a third-stage evidentiary hearing, this court's earlier characterization remains no less accurate even in light of the evidence adduced at that hearing.

¶ 44    This case requires us to apply the nexus rule established by *People v. Fair*, 193 Ill. 2d 256 (2000), to an unusual set of facts which the *Fair* court had no occasion to consider. In *Fair*, the court held, "a petitioner who alleges that his trial judge's corruption violated his right to a fair trial must establish (1) a 'nexus' between the judge's corruption or criminal conduct in other cases and the judge's conduct at petitioner's trial; and (2) actual bias resulting from the judge's extrajudicial conduct." *Id*. at 261 (quoting *People v. Titone*, 151 Ill. 2d 19, 30-31 (1992)). The court left the clause "at petitioner's trial" undefined, creating a gap which fails to resolve the question presented here, because a codefendant was tried simultaneously with Gacho.

¶ 45    If the *Fair* nexus test is too narrowly applied, it comes into tension with the Supreme Court authorities discussed above. Unlike the broader rule of *Hawkins*, which traces its lineage to *Murchison* and other constitutional decisions of the United States Supreme Court (see *Hawkins*, 181 Ill. 2d at 50-51), the nexus test as expressed by the Illinois Supreme Court in *Fair* merely traces back to *Titone*, 151 Ill. 2d at 30-31, which in turn cited *Commonwealth of Pennsylvania v. Shaw*, 580 A.2d 1379, 1381 (Pa. Sup. Ct. 1990), which in turn cited *Commonwealth of Pennsylvania v. Hewett*, 551 A.2d 1080, 1085 (Pa. Sup. Ct. 1988) and *Johnson v. Johnson*, 424

P.2d 414 (Okla. 1967).

¶ 46    The United States Supreme Court has repeatedly stated that the success of a judicial bias claim does not depend on whether the claimant can make a showing of actual bias. Compare *Fair*, 193 Ill. 2d at 261 (proof of actual bias is necessary for successful judicial bias claim) with *Caperton*, 556 U.S. at 883 (proof of actual bias is not required).

¶ 47    Under any interpretation, a correct application of the nexus test mandates reversal. The first prong of the test requires that Gacho show a nexus between Judge Maloney's misconduct and Gacho's case. Under the second prong, Gacho must show actual bias. Both requirements have clearly been satisfied here where, as this court has already stated, Gacho's and Titone's trials "were held simultaneously, concerned the same set of murders, *and were both presided over by a man the State concedes had an interest in the proceedings*." (Emphasis added.) *Gacho I*, 2012 IL App (1st) 091675, ¶ 20. We cannot view Gacho's case in isolation, but instead acknowledge that the taint of Titone's case fatally infected the entire proceeding. The egg, as it were, was irreversibly scrambled when Gacho's and Titone's cases were tried simultaneously using the same evidence and the same witnesses, and before the same judge, as a single judicial proceeding. It cannot now be unscrambled to sift Gacho's case out from Titone's case. Given the symbiotic relationship of Gacho's and Titone's trials, it follows perforce that Gacho has shown both the requisite nexus and actual bias to satisfy the nexus test, which in turn requires the reversal of his conviction. See *Tumey*, 273 U.S. at 535.

¶ 48    The majority attaches some importance to the fact that Gacho has been unable to single out any incorrect evidentiary rulings made by Judge Maloney. *Supra* ¶ 24. Indeed, our supreme court reviewed the record of this trial and found no evidentiary ruling warranting reversal of Gacho's conviction. *People v. Gacho*, 122 Ill. 2d 221 (1988); but see *id*. at 264-266 (Simon, J., dissenting) (stating that conviction should be reversed due to improper cross-examination of

Gacho, over his objection, about the contents of a letter he wrote from prison). But the presence or absence of "questionable" rulings by an allegedly biased judge is itself a matter of little relevance. As the Seventh Circuit explained in *Cartalino v. Washington*—a case the majority cites with approval—the relevant issue is not whether any of Judge Maloney's individual rulings in Gacho's case were biased. Instead, we must consider "whether the judge was biased, regardless of how his bias may have manifested itself, or failed to manifest itself." 122 F.3d 8, 10 (7th Cir. 1997). Moreover, as the Supreme Court made clear in *Caperton*, Gacho's ability (or inability) to prove that Judge Maloney was actually biased against him is not a proper basis to resolve Gacho's petition:

> "The difficulties of inquiring into actual bias, and the fact that the inquiry is often a private one, simply underscore the need for objective rules. Otherwise there may be no adequate protection against a judge who simply misreads or misapprehends the real motives at work in deciding the case. The judge's own inquiry into actual bias, then, is not one that the law can easily superintend or review, though actual bias, if disclosed, no doubt would be grounds for appropriate relief. In lieu of exclusive reliance on that personal inquiry, or on appellate review of the judge's determination respecting actual bias, the Due Process Clause has been implemented by objective standards that do not require proof of actual bias." [Citations.] In defining these standards the Court has asked whether, 'under a realistic appraisal of psychological tendencies and human weakness,' the interest 'poses such a risk of actual bias or prejudgment that the practice

must be forbidden if the guarantee of due process is to be adequately implemented.' " *Caperton*, 556 U.S. at 883-84 (quoting *Withrow*, 421 U.S. at 47).

¶ 49    As demonstrated above, applying the nexus test too narrowly under the unique facts of this case is at odds with established United States Supreme Court precedent. It also creates an incongruous and constitutionally infirm result. Gacho's codefendant, who *actually bribed* Judge Maloney, received a new trial because he "did not receive the kind of a fair, impartial trial before a fair, unbiased, impartial judge that his constitutional right as a citizen required." Gacho, in contrast, has not received a new trial. See Ian Ayres, *The Twin Faces of Judicial Corruption: Extortion and Bribery*, 74 Denv. U.L. Rev. 1231, 1252-53 (1997) (quoting  *People v. Titone*, 83 C 127 (Cir. Ct. Cook County), Report of Proceedings heard before the Honorable Earl E. Strayhorn at 12 (July 25, 1997)).

¶ 50    I agree with Judge Ilana Diamond Rovner of the Seventh Circuit Court of Appeals who so eloquently stated in another case involving Judge Maloney: "If due process means anything, I think we must assume that Maloney's corruption pervaded his work as a judge. The Supreme Court could not have put it more clearly:  '[W]hen the trial judge is discovered to have had some basis for rendering a biased judgment, his actual motivations are hidden from review, and we must presume that the process was impaired.' "  (Alteration in the original.)  *Bracy v. Gramley*, 81 F. 3d 684, 699-700 (7th Cir. 1996) (Rovner, J., dissenting) (quoting *Vasquez v. Hillery*, 474 U.S. 254, 263 (1986)), *rev'd*, 520 U.S. 899 (1997); see also *Cartalino*, 122 F. 3d at 11 (Rovner, J., specially concurring).

¶ 51    For these reasons, I must respectfully dissent from the majority's resolution of Gacho's Due Process claim. I would reverse the judgment of the trial court and remand for a new trial. I join in the portion of the majority opinion affirming the trial court's denial of relief as to Gacho's

ineffective assistance of counsel claim.   See *supra* ¶¶ 25-34.