2021 IL App (1st) 192227-U

No. 1-19-2227

Order filed June 15, 2021.

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 04 CR 28307-01 |
| | ) | |
| JOSE RIVERA, | ) | The Honorable |
| | ) | Geary W. Kull, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE LAVIN delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Cobbs concurred in the judgment.

ORDER

¶ 1    *Held*: Defendant failed to show a substantial constitutional deprivation following his third-stage evidentiary hearing under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2018)). This court affirmed the circuit court's judgment denying the petition.

¶ 2    Defendant Jose Rivera appeals from the denial of his petition, filed under the Post-

Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)), following a third-stage

evidentiary hearing as to whether his trial counsel was constitutionally ineffective during plea

negotiations. Defendant argues the circuit court's determination was manifestly erroneous and contrary to the law. We affirm.

¶ 3                                    BACKGROUND

¶ 4      Following a jury trial, defendant was found guilty of multiple sex offenses. Trial evidence showed that over several years defendant used threats, promises, and coercion to force his then 12-year-old stepdaughter, J.M., into repeated acts of oral sex. Defendant also initiated vaginal intercourse and took nude photographs of J.M. At one point, he convinced J.M.'s 13-year-old friend, J.T., to perform various sexual acts, including oral sex on defendant. He threatened both girls' compliance and silence, which eventually led to a 45-count indictment[1] and the ensuing trial. Although defendant denied the allegations against him, the jury found defendant guilty of three counts of predatory criminal sexual assault, three counts of criminal sexual assault, five counts of aggravated criminal sexual abuse, and one count of child pornography. He was then sentenced to a total of 75 years in prison.

¶ 5      All but two convictions were affirmed on appeal. See *People v. Rivera*, 2014 IL App (1st) 092472-UB; see also *People v. Rivera*, 2013 IL 112467. This court, however, vacated defendant's conviction on Count 13 for criminal sexual assault due to a fatal variance and also vacated his conviction on Count 45 for possessing child pornography due to insufficient evidence as to whether the videotape actually depicted an underage female. *People v. Rivera*, 409 Ill. App. 3d 122, 140, 146 (2011). Defendant's sentence was reduced to 71 years.

---

[1]Defendant was charged with twelve Class X felonies carrying 6 to 30 years each (720 ILCS 5/11-1.40(a)(1) (West 2018); 730 ILCS 5/5-4.5-25 (West 2018)), ten Class 1 felonies carrying 4 to 15 years each (720 ILCS 5/11-1.20(a)(3) (West 2018); 730 ILCS 5/5-4.5-30 (West 2018)), twenty-two Class 2 offenses carrying 3 to 7 years each (720 ILCS 5/11-1.60 (West 2018); 730 ILCS 5/5-4.5-30 (West 2018)), and one Class 3 offense carrying 2 to 5 years (720 ILCS 5/11-20.1 (West 2018); 730 ILCS 5/5-4.5-40 (West 2018)).

¶ 6    Defendant, through counsel, subsequently filed an amended petition under the Act, alleging that his trial counsel was constitutionally ineffective for failing to advise him of the "potentially harsh punishment" he faced in contrast to the State's 6-year plea offer. Defendant asserted that had he known of the "remote possibility of receiving a 75-year sentence," he would have pleaded guilty. These allegations eventually prompted a third-stage evidentiary hearing, wherein defendant's trial counsel, Michael Goggin, defendant, and defendant's uncle, Charles Grant, all testified.

¶ 7    Goggin testified that he informed defendant there were multiple counts charged, many of which were Class X felonies[2] carrying 6 to 30 years with a possible extended 60-year period, that would run consecutively (meaning, one after the other), and based on that, defendant faced substantial prison time if convicted. Goggin explained the charges to defendant prior to trial. According to Goggin, notwithstanding that advice, when presented with the State's pre-trial offer of six years for pleading guilty to one count, defendant rejected the offer. Goggin testified that defendant wanted to go to trial, and Goggin believed defendant felt he was innocent. In addition, the hearing evidence showed that when defendant was first at the police station and confronted by the allegations of abuse, he repeatedly told an Assistant State's Attorney (ASA) and Investigator he wanted a guarantee of no "jail" time if he confessed. In fact, according to the ASA, defendant "was adamant about not wanting to do any jail, about wanting probation." Police also told him he faced a lifetime in prison.

¶ 8    Defendant and his uncle (who was present for court appearances and consults with Goggin) testified contrarily that Goggin never advised defendant of the possible sentence, the range, or explained consecutive sentencing (although defendant acknowledged on cross-

_____

[2]Prior to trial and on other occasions, Goggin explained to defendant what a Class X felony meant in terms of sentencing.

examination that defendant spoke with Goggin about the charges he was facing prior to trial). Defendant had no idea he faced "anywhere near" 75 years in prison. Had he known the charges carried such a stiff sentence, defendant would have accepted the State's plea offer. This was notwithstanding defendant's profession of innocence at trial and thereafter, his desire *not* to be labeled a sex offender on conviction, and his admission that he then felt six years was a "long time." At the hearing, defendant stated he was not going to plead guilty to something he did not do, but acknowledged he could not have done better than six years by going to trial.

¶ 9     The postconviction court found that Goggin's representation of defendant was reasonable and, regardless, defendant would not have accepted any plea deal requiring sex offender registration and prison time as he believed in his innocence. Thus, even assuming any deficiency on Goggin's part, the court held there was no reasonable probability defendant would have accepted the alleged plea offer. In so concluding, the court stated it believed Goggin over defendant's self-serving testimony and that of his uncle regarding Goggin's admonishments to defendant.

¶ 10    Accordingly, the postconviction court denied defendant's petition finding he failed to establish a substantial deprivation of his constitutional rights, and defendant appealed.

¶ 11                                    ANALYSIS

¶ 12    The Act provides a procedural mechanism through which a criminal defendant can assert that his federal or state constitutional rights were substantially violated in his original trial or sentencing hearing. 725 ILCS 5/122-1(a) (West 2018); *People v. Davis*, 2014 IL 115595, ¶ 13. When a postconviction petition advances to a third-stage evidentiary hearing, the defendant bears the burden of showing a substantial deprivation of his constitutional rights. *People v. Gacho*,

2016 IL App (1st) 133492, ¶ 15. Where, as in this case, fact-finding and credibility determinations are made by the circuit court in a third-stage proceeding, its decision will not be reversed on appeal unless it is manifestly erroneous, *i.e.*, error that is "clearly evident, plain, and indisputable." *Id.*

¶ 13    Defendant maintains the circuit court committed manifest error in rejecting his claim that trial counsel's representation of him during plea negotiations was constitutionally ineffective. Indeed, the right to effective assistance of counsel extends to the decision to reject a plea offer, even if the defendant later receives a fair trial. *People v. Hale*, 2013 IL 113140, ¶ 16. For an ineffectiveness claim, a defendant must show that counsel's performance fell below an objective standard of reasonableness and there is a reasonable probability that the result of the proceeding would have been different but for counsel's unprofessional errors. *People v. Henderson*, 2013 IL 114040, ¶ 11. For prejudice, the defendant must establish that there is a reasonable probability that, absent his attorney's deficient advice, he would have accepted the plea offer. *Hale*, 2013 IL 113140, ¶ 18. A defendant also must demonstrate the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it. *Id.* ¶¶ 19-20. For the reasons to follow, defendant cannot meet these standards, as the circuit court's determination was not manifestly or legally erroneous.

¶ 14    Defendant, who had several years of college education in computer science, specifically argues that his defense counsel failed to inform him of the exact number of years to which he was subject on the 45 counts. As to the twelve Class X charges for predatory criminal sexual assault of a child, the State has calculated the potential sentence to be anywhere between 72 to 360 years (numbers, incidentally, that defendant does not dispute). See 720 ILCS 5/11-1.40(a)(1) (West 2018); 730 ILCS 5/5-4.5-25 (West 2018). Defendant maintains he was unaware of the

maximum sentence, in violation of the law. See *People v. Curry*, 178 Ill. 2d 509, 528 (1997) (noting that an attorney must inform his client of the maximum and minimum sentences that can be imposed for the charged offenses).

¶ 15    The postconviction court, however, found Goggin explained the charges to defendant and told defendant he was subject to multiple Class X offenses, each carrying 6 to 30 years, and running consecutively; effectively, Goggin informed defendant (who was then almost age 40) that he could be subject to a *de facto* or life sentence and defendant was thus reasonably informed of the consequences of rejecting the alleged plea offer. Even with that knowledge and the huge disparity between the alleged plea offer and potential sentence, defendant still rejected it. See *People v. Walker*, 2018 IL App (1st) 160509, ¶¶ 34-36 (noting that a disparity between the sentence and plea offer did not support a finding of prejudice); *People v. Miller*, 393 Ill. App. 3d 629, 637 (2009) (noting, a possible lengthy sentence did not dissuade the defendant from going to trial and rejecting the State's plea offer).

¶ 16    Moreover, the evidence and court's credibility findings, which we are not at liberty to question, show defendant would not have accepted the alleged plea even assuming defense counsel's deficiency. See *Missouri v. Frye*, 566 U.S. 134, 147 (2012) (noting, for prejudice, defendants must show a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance); *People v. Carter*, 2013 IL App (2d) 110703, ¶ 74 (noting, it's the postconviction court's function at a third-stage evidentiary hearing to determine witness credibility, decide the weight of testimony and evidence, and resolve evidentiary conflicts). From the outset, and in response to the allegations, defendant repeatedly stated he did not want any jail time, he professed his innocence, and Goggin testified that defendant wanted to go to trial. See *Hale*, 2013 IL 113140, ¶¶ 26-27. In fact, this matter was first raised in

defendant's amended postconviction petition, without defendant having ever complained about it previously. We note defendant maintained on direct appeal that his trial counsel was ineffective in a multitude of ways, but not as to any offered plea deal. The evidence thus supports the court's finding that defendant's rejection of the alleged plea was based on other considerations, and not on defense counsel's alleged omissions. See *id*., ¶¶ 18, 28.

¶ 17    We thus find defendant's argument that the postconviction court failed to consider the disparity between the alleged plea offer and his ultimate sentence belied by the record. Here, the court noted that while such a disparity could support a claim of prejudice, it was not determinative in a case like the present where defendant did not wish to plead guilty under any circumstances. See *Hale*, 2013 IL 113140, ¶ 21. The court's finding was amply supported by the evidence.

¶ 18    Moreover, as the postconviction court found, it's questionable that a true plea offer even existed given that there's no formal record evidence of it before the trial court. Defendant's uncle testified that Goggin reported that the prosecutor was only "thinking about" six years and that it was "not an offer." See *People v. Guerrero*, 2011 IL App (2d) 090972, ¶ 68 (noting, a defendant does not have a constitutional right to a plea bargain); see also *People v. Nelson*, 246 Ill. App. 3d 824, 830 (1993) (noting that the court is free to accept or reject as much or as little as it pleases of a witness' testimony). Also, because of the serious nature of the offenses and the strong evidence against defendant it is unlikely the prosecutor or court (which imposed a substantial sentence of 75 years) would have accepted a 6-year plea deal. See *People v. Brown*, 2015 IL App (1st) 122940, ¶ 71 (noting, the defendant was unable to make a substantial showing that there was a reasonable probability the court would have accepted the 3-year plea bargain in light of the severity of the 13-year sentence ultimately imposed); *People v. Edwards*, 128 Ill. App. 3d 993,

1008 (1984) (noting a lesser sentence would deprecate the seriousness of the offense). Defendant thus failed to fulfill his burden of demonstrating *Strickland* prejudice.

¶ 19                                    CONCLUSION

¶ 20    For the reasons stated, we affirm the judgment of the circuit court denying defendant's postconviction petition following a third-stage evidentiary hearing.

¶ 21    Affirmed.