2024 IL App (1st) 240368-U

FIRST DISTRICT,
FIRST DIVISION
May 28, 2024

No. 1-24-0368B

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County, Illinois. |
| Plaintiff-Appellee, | ) | |
| v. | ) | No. 241100755401 |
| | ) | |
| MARTINO DICKSON, | ) | |
| | ) | Honorable |
| Defendant-Appellant. | ) ) | Susana Ortiz, Judge Presiding. |

_____

JUSTICE COGHLAN delivered the judgment of the court.
Justices Lavin and Pucinski concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court did not abuse its discretion in denying defendant pretrial release.

¶ 2    Defendant Martino Dickson appeals from the trial court's order denying him pretrial release pursuant to the amendments to article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/100-1 *et seq.* (West 2022)), commonly known as the Safety, Accountability, Fairness and Equity-Today (SAFE-T) Act or Pretrial Fairness Act (Act). See Pub. Act 101-652 (eff. Jan. 1, 2023); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date as September 18, 2023). For the following reasons, we affirm.

¶ 3                                          BACKGROUND

¶ 4        Defendant was arrested on February 2, 2024, and charged with unlawful use of a weapon by a felon (UUWF) (720 ILCS 5/24-1.1(a) (West 2022)) and driving under the influence of alcohol (DUI). The State filed a petition for pretrial detention, alleging that the proof is evident or the presumption great that defendant committed the qualifying offense of UUWF and that he poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case.

¶ 5        A pretrial detention hearing was held on February 3, 2024, at which the State proffered the following evidence. On February 2, 2024, defendant was the driver and sole occupant of a vehicle that was curbed for failing to maintain its lane and almost hitting another vehicle while driving on I-90. When police officers spoke to defendant, they "smelled a strong odor of an alcoholic beverage coming from [his] person." They "asked the Defendant to exit *** the vehicle to do standard field sobriety tests," "[a]t which point [he] exhibited signs of consumption and impairment." Upon conducting a "protective pat down" of defendant, officers recovered a loaded, 9mm "ghost gun" from his waistband.

¶ 6        Defendant has three prior felony convictions: a 2012 conviction for possession of a stolen motor vehicle, for which he received boot camp; a 2016 UUWF conviction, for which he was sentenced to five years' imprisonment in the Illinois Department of Corrections (IDOC); and a 2019 UUWF conviction that he committed while on parole for the 2016 offense, and for which he received five years in the IDOC. He was discharged from parole for his 2019 UUWF conviction on March 31, 2023.

¶ 7        The State argued that the proof is evident or the presumption great the defendant committed UUWF and that he poses a real and present threat to the community because he "was

in possession of a loaded ghost gun while he was driving intoxicated on I90" and has two prior UUWF convictions. The State maintained that no condition or combination of conditions can mitigate the risk defendant poses to the safety of the community since he was "in possession of a firearm in the community while driving intoxicated" and could "pick[ ] up other cases while *** on pretrial monitoring or electronic monitoring [(EM)]."

¶ 8        Defense counsel responded that EM could mitigate any risk defendant poses to the community since defendant was discharged from parole "at least a year" before committing the instant offense, demonstrating his "ability to comply with court orders." Defendant also received Pretrial Services Assessment scores of 3 for new criminal activity, 2 for failure to appear, and a release recommendation of pretrial monitoring. In mitigation, defense counsel offered that defendant is 31 years old, is a life-long resident of Cook County, has three children that live with him, has a GED, and has been self-employed full-time in carpentry work for the past two years.

¶ 9        The trial court found that the State proved by clear and convincing evidence that the proof is evident and the presumption great that defendant committed UUWF. The court also found that defendant poses a real and present threat to the safety of the community. Defendant was not only in possession of a firearm, but a loaded, "non-traceable gun," *i.e.*, the type of gun that is typically used to "engage in violence or criminal activity," and was driving while "significantly impaired by alcohol." The trial court found that defendant is a danger to the community "every time [he] is in possession of firearms."

¶ 10        In determining whether any condition or combination of conditions could mitigate the threat to the safety of the community posed by defendant, the trial court noted that EM "is not full proof," as it can "be walked away from *** [and] ignored." The court concluded that no less restrictive conditions could mitigate the threat posed by defendant, considering that "[i]t [had

not] even been a year since he came off of parole" for his 2019 UUWF conviction, which he "picked up while *** on parole for another firearm's offense."

¶ 11                                                    ANALYSIS

¶ 12        Defendant argues that the State failed to prove by clear and convincing evidence that no condition or combination of conditions can mitigate the real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case. Specifically, defendant asserts that the State "did not show" why less restrictive conditions "such as electronic monitoring would fail to mitigate the safety risk" posed by defendant's release.

¶ 13        Pursuant to article 110 of the Code, as amended, "[a]ll defendants shall be presumed eligible for pretrial release" and pretrial release may only be denied in certain statutorily limited situations. 725 ILCS 5/110-6.1(e) (West 2022). After filing a timely verified petition requesting denial of pretrial release, the State has the burden of proving by clear and convincing evidence that: the proof is evident or the presumption great that defendant has committed a qualifying offense; defendant's pretrial release poses a real and present threat to the safety of any person or the community, based on the specific articulable facts of the case, or that defendant has a high likelihood of willful flight to avoid prosecution; and less restrictive conditions would not mitigate the real and present threat to the safety of any person or the community and/or prevent defendant's willful flight. 725 ILCS 5/110-6.1(e), (f) (West 2022).

¶ 14        If the trial court finds the State proved a threat to the safety of any person or the community, the court must then determine which pretrial release conditions, "if any, will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release." 725 ILCS 5/110-5(a) (West 2022); see also 725 ILCS 5/110-10 (a), (b) (West

2022) (listing both mandatory and permissible conditions of pretrial release). In making this determination, the trial court "shall" consider: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; (4) the nature and seriousness of the specific, real and present threat to any person that would be posed by the defendant's release; and (5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process. 725 ILCS 5/110-5(a) (West 2022). No singular factor is dispositive. *Id.* "The conditions of release imposed shall be the least restrictive conditions or combination of conditions necessary to reasonably ensure the appearance of the defendant as required or the safety of any other person or persons or the community." 725 ILCS 5/110-5(c) (West 2022).

¶ 15 We review the trial court's ultimate determination regarding pretrial release for an abuse of discretion (*People v. Inman*, 2023 IL App (4th) 230864, ¶ 10 (citing *People v. Simmons*, 2019 IL App (1st) 191253, ¶ 9)), while we review the trial court's factual findings under the manifest weight of the evidence standard (*People v. Rodriguez*, 2023 IL App (3d) 230450, ¶ 8).[1] See also *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13. An abuse of discretion occurs only when the court's judgment is fanciful, arbitrary, or unreasonable, or when no reasonable person would agree with the court's position. *Simmons*, 2019 IL App (1st) 191253, ¶ 9. "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or the finding itself is unreasonable, arbitrary, or not based on the evidence presented." *People v. Deleon*, 227 Ill. 2d 322, 332 (2008).

---

[1] There has been considerable disagreement regarding which standard of review applies to pretrial detention orders. See, *e.g.*, *People v. Whitmore*, 2023 IL App (1st) 231807, ¶ 18 (applying only an abuse of discretion standard); *People v. Pitts*, 2024 IL App (1st) 232336, ¶ 29 (applying exclusively a manifest weight standard); *People v. Sorrentino*, 2024 IL App (1st) 232363, ¶ 34 (reviewing the denial of pretrial release *de novo*, but findings of historical fact for manifest error). Our conclusion would be the same under any of these standards.

¶ 16    Based on our review of the record, the trial court did not abuse its discretion in denying defendant pretrial release. As the trial court noted, less restrictive conditions like EM can be walked away from or ignored. This would not sufficiently mitigate the threat defendant poses to the safety of the community considering his two prior UUWF convictions; his possession of a loaded ghost gun, *i.e.*, an "untraceable firearm that was designed to avoid surveillance" (*People v. Davis*, 2023 IL App (1st) 231856, ¶ 29); and the fact that he possessed that loaded, deadly weapon as he was driving on an interstate highway while significantly impaired. Moreover, defendant committed UUWF in 2019 while on parole for yet another UUWF conviction, and was only discharged from parole less than a year before the instant offense. Accordingly, we cannot say that the trial court's conclusion that no condition or combination of conditions could mitigate defendant's real and present threat to the safety of the community was "unreasonable, arbitrary, or not based on the evidence presented." *Deleon*, 227 Ill. 2d at 332; see also *Davis*, 2023 IL App (1st) 231856, ¶¶ 31-32 (finding that no less restrictive conditions could mitigate the threat defendant posed to the safety of the community where he possessed a ghost gun and his criminal history showed "an unwillingness to follow the rules set out by law enforcement").

¶ 17    Defendant also argues that the trial court erred in its determination that no condition or combination of conditions would reasonably ensure the appearance of defendant for later hearings or prevent defendant from being charged with a subsequent felony or Class A misdemeanor. However, the trial court did not make such a determination, as this standard is only applicable to a petition to revoke or modify pretrial release under section 110-6 of the Code. See 725 ILCS 5/110-6(a) (West 2022).

¶ 18                                    CONCLUSION

¶ 19    For the foregoing reasons, we affirm the order of the circuit court of Cook County.

¶ 20        Affirmed.